FILED
 2015 Feb-10 PM 02:08
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEANETTE CHARLENE BREEDLOVE, )<br>)<br>Claimant, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, )<br>)<br>Defendant. ) | Case No. 2:14-CV-1122-CLS |

## MEMORANDUM OPINION AND ORDER

Claimant, Jeanette Charlene Breedlove, commenced this action on June 12, 2014, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant contends that she should have been found to be disabled under Listing 12.05C, addressing intellectual disability.

That Listing states as follows:

> *Intellectual disability.* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.05 (listings) (italics in original, ellipses supplied).[1]

---

[1]   Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,4501 (Aug. 1, 2013) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id*. at 46,499. But this change "d[id] not affect the actual medical definition of the disorder or available programs or

The ALJ acknowledged that claimant received an IQ score of 64 when she was in the fifth grade,[2] and it cannot be denied that claimant has physical impairments that impose significant work-related limitations of function.  Indeed, the ALJ found that claimant had the severe impairments of status post non-ST elevation myocardial infarction, congestive heart failure, hypertension, asthma, gastroesophageal reflux disease, arthraliga, and obesity,[3] and she concluded that claimant retained the residual functional capacity to perform only a reduced range of sedentary work.[4]

Even so, the ALJ found that claimant did not satisfy the remaining prefatory criterion of the Listing, *i.e.,* "deficits in adaptive functioning initially manifested during the developmental period."  That finding was based upon claimant's vocational background and adaptive functioning.

> Specifically, the claimant completed 12 years of formal education.  She further possessed the intellectual capacity to comprehend and apply concepts required by the State to earn certification for the nurse's assistance program.  She also mastered the techniques necessary to earn a State issued license to work as a hairstylist.  The claimant's jobs were also determined by the Vocational Expert to be semi-skilled job[s] and skilled jobs.  The claimant has been able to work and raise four children

---

services." *Id.* at 49,500.

*Frame v. Commissioner, Social Security Administration*, – F. App'x – , 2015 WL 150733, *2 n.2 (11th Cir. Jan. 13, 2015) (alteration in original).  Thus, even though the ALJ's decision was "issued before the change took effect," this court, like the Eleventh Circuit panel in *Frame,* will "follow the agency's new nomenclature." *Id.* at *2 n.2.

[2] Tr. 23.
[3] Tr. 22.
[4] Tr. 24.

. . . , and currently cares for 3 young grandchildren that are not yet in school and sometimes up to 6 grandchildren ranging in ages 2 to 7. The claimant also reported that she shops for food and household needs, cooks, does housework, can take care of personal needs, and can pay bills. She reported that she has some problems counting change and reading . . . . This does not establish that the claimant has significant subaverage general intellectual functioning as required by the introductory paragraph of [Listing] 12.00. Because the claimant does not meet the requirements of the introductory paragraph of [Listing] 12.00, the claimant cannot meet the requirements of the listing, even if she did meet the requirements in paragraphs A, B, C, or D. Therefore, the claimant does not meet the listing in 12.05.[5]

Claimant first argues that the ALJ should have conducted an additional psychological consultative examination in order to determine claimant's current IQ. There would be no point in conducting such an examination, however, because, despite acknowledging claimant's IQ score of 64 from fifth grade, the ALJ nonetheless found that claimant did not satisfy Listing 12.05C because she did not meet the prefatory criterion of demonstrating deficits in adaptive functioning.

Claimant also challenges the substance of the ALJ's finding that she did not demonstrate sufficient deficits in adaptive functioning. Claimant points out that, even though she did complete twelve years of formal education, she was in special education classes. While claimant's receipt of special education services certainly is something to be considered, the Eleventh Circuit has decided, albeit in an unpublished opinion, that a claimant who graduated from high school, but received

---

[5] Tr. 23 (bracketed alterations and ellipses supplied, citations to the record omitted).

special education services, did not demonstrate sufficient deficits in adaptive functioning to satisfy Listing 12.05C. *See Hickel v. Commissioner of Social Security,* 539 F. App'x 980, 984 (11th Cir. 2013). Thus, claimant's receipt of special education services, standing alone, does not demonstrate significant deficits in adaptive functioning. Moreover, the record supports the remainder of the ALJ's findings about claimant's adaptive functioning, and those findings were consistent with applicable authority. *See Garrett v. Astrue*, 244 F. App'x 937, 939 (11th Cir. 2007) (holding that the claimant's ability to cook simple meals, perform household chores, build model cars, attend church, watch television, play cards, and walk in the mall were inconsistent with a finding of significant impairment of adaptive functioning); *Outlaw v. Barnhart,* 197 F. App'x 825, 827 (11th Cir. 2006) (stating that the claimant's "long work history in semi-skilled positions and daily activities were inconsistent with his adult IQ scores," which were below 70); *Humphries v. Barnhart*, 183 F. App'x 887, 889 (11th Cir. 2006) (holding that substantial evidence supported the ALJ's finding that the claimant did not have deficits in adaptive functioning when she worked in a school cafeteria for 21 years and served as the manager for about 15 years).

Based on the foregoing, the Commissioner's finding that claimant is not disabled was supported by substantial evidence and in accordance with applicable law. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed

against claimant. The Clerk of Court is directed to close this file.

DONE this 10th day of February, 2015.

_____
United States District Judge